**SO ORDERED.**

**SIGNED this 30 day of January, 2008.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD ARLEN DICK and | ) | Case No. 06-12221 |
| MARSHA GAYLE DICK, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## Order on Valuation of Aircraft Part Inventory

This case came on for an evidentiary hearing on January 23, 2008 for confirmation of debtors Richard and Marsha Dicks' chapter 13 plan filed on November 15, 2006.[1] Debtors appeared in person and by Steven Wagle. Objecting creditor Allen Duckworth appeared personally and by Martin W. Bauer. The chapter 13 trustee, Laurie B. Williams, appeared

_____

[1] Dkt. 2.

in her own behalf. The court received the oral testimony of Richard Dick and Bud Palmer, the debtors' valuation witness. The Court also received the deposition testimony of James Dalton Rhodes, Duckworth's valuation witness. After hearing the evidence and carefully reviewing the testimony concerning value, the Court is prepared to rule.

Debtors' plan filed November 15, 2006 proposed to pay $268 per month for 36 months for a total of $9,648. Both the Trustee and an unsecured creditor, Allen B. Duckworth objected to the debtors' plan.[2] The Trustee's objections center on the debtors not paying liquidation value of their property to the unsecured creditors as required by 11 U.S.C. § 1325(a)(4). The Trustee also asserts that the debtors' plan is not filed in good faith and is not feasible. Duckworth joins in these objections. At the hearing, the parties agreed that if Richard Dick's aircraft parts inventory was worth more than $4,500, debtors' plan was likely to be unfeasible. Also at issue is the value of certain farm equipment, machinery, and rolling stock observed on the premises of the Dicks' farm in rural Hutchinson, but neither the debtors nor the creditors offered any valuation evidence concerning these items. Thus, the sole issue before the Court today is the value of the aircraft parts inventory and whether the debtors' plan repays the liquidation value of their property to the creditors as Chapter 13 requires.

<u>Findings of Fact</u>

Richard Dick is a licensed pilot who has run aviation-related businesses in Colorado

---

[2] Dkt. 15 and 18.

and Kansas for 30 years. He sold a Bell 47 helicopter to Allen Duckworth in 2003. Finding the helicopter deficient, Duckworth sued Dick in Colorado state court on warranty and breach of contract theories and obtained a $145,000 judgment against Dick in November of 2006. Duckworth is Dick's largest unsecured creditor.

At Dick's 35 acre farm in Reno County, he maintains an aircraft repair and sales business. He also flies as a contract pilot. As part of his repair and sales business, he maintains an inventory of helicopter parts, most of which are specific to the Bell 47 model. None of these parts is certified for airworthiness. Most of them are stored in a Connex metal container and larger aircraft components are stored outdoors around the Dick property. Most of the inventory requires some type of refurbishing to be re-certified. It is undisputed that Dick needs the parts inventory to generate an income and fund the plan.

In order for the Court to confirm the Dicks' chapter 13 plan, the debtors must show by a preponderance of the evidence that the plan meets the requirements of § 1325(a). With regard to unsecured creditors, the plan must return to the unsecured creditors not less than they would receive were the Dicks' assets to be liquidated in a chapter 7 case.[3] The Court must therefore determine what these parts might bring in a chapter 7 liquidation, keeping in mind that a chapter 7 trustee would incur administrative expense in liquidating this property. The Court must make two mathematical calculations: (1) the Court must estimate what would be distributed to creditors in a chapter 7 case; and (2) the Court must determine what

---

[3] 11 U.S.C. § 1325(a)(4).

-3-

the present value of the stream of payments to be made to unsecured creditors under the plan is.[4] Both determinations are made as of the "effective date of the plan," which most courts construe to mean the petition date.

The valuation standard employed in making this determination is what a chapter 7 trustee might get – liquidation, foreclosure, or forced sale value – as opposed to what a secured creditor might be entitled to recover under § 506(a) and *Rash*.[5] The Court in this case received valuation evidence from two witnesses.

The debtors offered the testimony of Bud Palmer. Palmer is an auctioneer of iconic status in the Wichita area. He has performed countless auctions of nearly every kind of asset over fifty years. Palmer testified that while he had no specific experience selling helicopter parts, he had sold inventories of aircraft parts in the past. He stated that he sold out a failed aviation enterprise in Newton, Kansas. He viewed the Dick inventory and took several photographs of the parts, most of which appeared to be piled in boxes inside the storage container. He did not itemize the inventory but noted that none of the parts came with airworthiness certificates and would need to be re-certified in order to be incorporated into an airframe. Palmer did not opine what it would cost to obtain certification for the parts. He valued the parts at "$3,500 to $4,500" and the Connex container at $1,000.

Duckworth offered the testimony of James Dalton Rhodes. Rhodes is a aircraft

---

[4] KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY 3D EDITION, § 160.1, p. 160-1 (2000 and 2004 Supp.).

[5] *Id.* at 160-14; *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997).

-4-

service mechanic who specializes in maintaining Bell 47 craft in Texas. He runs a maintenance facility in Victoria, Texas and is certified by the Federal Aviation Administration to inspect airframes and power plants. He is qualified to conduct annual inspections and major aircraft repair. He has extensive experience in aircraft maintenance. He inventoried and listed all of the parts at Dick's residence and priced them using a number of resources employed by those in the repair industry, including an on-line database as well as parts dealers around the country. During his deposition, no one asked him about the impact of certification or lack thereof on the value of any of these parts. He evaluated whether each part was new or used and priced them accordingly. He valued these parts, "based on the idea that you would have no deadline to perform any sale," at $261,388.60. But Mr. Rhodes also stated –

> If these parts were needed to be moved, then there would be serious adjustments on the price, if it was needed to be done quickly. * * * Over a one year period based on knowing the – of being pretty familiar with the fleet of Bell 47s that are out there, I would say you would have a very difficult time moving these parts without selling them in blocks. *I would guesstimate probably get 50 to 60 cents on the dollar if you did it over a year's time.*[6]

Thus, Rhodes' view is that given a year's time, one could sell off the parts for about $130,000 to $156,000. Rhodes also agreed that if these parts were sold by someone not vending to the aircraft industry, their value would be largely as scrap.[7] He stated that he would gladly pay $4,500 for the entire inventory.

---

[6] Exhibit 24, p. 15 [emphasis added.].

[7] *Id.* at p. 18.

Analysis

In affixing a value to this inventory, the Court is somewhat constrained by the evidence in the record. Not all, or even many of the plausible scenarios for the liquidation of these assets were explored by the parties. A trustee might well auction the parts at Palmer Auction, essentially as scrap, and realize the $3,500 to $4,500 that Palmer testified to. Storage costs and other administrative considerations would keep a trustee from holding the parts for a year or more and sell them in the ordinary course as the Rhodes testimony contemplates. Indeed, it is unlikely that a trustee would even market the property in blocks as Rhodes described in an effort to garner the $130,000 that he posits. The Court hopes that a trustee in this District would at least attempt to place the parts with an auctioneer or vendor having aviation connections in an effort to maximize the value beyond scrap but, at the same time, the Court knows that the aviation industry pervades the Wichita area. There might well be a lively concourse of bidders for these parts whether or not the auctioneer was an aviation "specialist." The Court accords weight and respect to Rhodes' expertise, but concludes that he did not testify about a liquidation sale of the parts similar to that which a chapter 7 trustee might perform. Nor did he consider the re-certification of these parts and that attendant cost.

The only other evidence of value presented to the Court was Dick's testimony that he received a $10,000 offer for the inventory in the spring of 2007. That offer, however, required the parts to be in a refurbished condition through Dick's labors.

The preponderance of the evidence is that an auctioneer selling these parts in this geographical area on a forced sale or liquidation basis is likely to receive $4,500, the high

-6-

end of Palmer's appraisal estimate. For chapter 13 liquidation test purposes, the Court values the parts inventory at $4,500 and accepts Palmer's appraisal of the Connex container at $1,000. The trustee would be entitled to § 326 compensation on $5,500, or $1,300. The Court has no evidence of what the auctioneer's commission would be and makes no deduction therefor. This would leave $4,200 for distribution to the creditors.

It now remains for the Court to determine whether the stream of payments offered by the debtor have a present value equal to or in excess of $4,200. Assuming without deciding that debtor's plan is feasible (a questionable assumption at best[8]), the Court finds that the plan's 36 monthly payments of $268 provide total payments of $9,648. Deducting from that amount $1,000 attorney's fees to the debtor, $1,072 in statutory chapter 13 trustee's fees, and the $6,915 home mortgage arrearage to Countrywide Mortgage, leaves only $661 dollars total over three years. This is far less than would be necessary to fund a stream of payments having a present value equal to or greater than $4,200.[9]

The plan therefore cannot be confirmed because it fails to return to the unsecured creditors an amount equal to what they would receive in a chapter 7 liquidation case.

---

[8] The evidence on feasibility was very sketchy but did suggest that Mrs. Dick had recently lost her employment as a result of health problems, taking some $30,000 in annual income out of the family's budget. It seems unlikely that Mr. Dick can sustain an arrears payment, a $1,500 monthly house payment, and the requisite unsecured creditors' payment on the very small sums that his business ordinarily generates and his social security income.

[9] In addition, this does not take into account the miscellaneous non-exempt farm equipment and other assets omitted from the liquidation analysis. It is likely that an amount greater than $4,200 would be available for distribution to the creditors if these omitted assets were included.

Case 06-12221   Doc# 95   Filed 01/30/08   Page 7 of 8

Confirmation is therefore DENIED. The debtors shall have 30 days to amend their plan, taking into account this Court's valuation of the helicopter parts inventory, or convert this case to Chapter 7.

# # #